UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN JOHN HECKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:23-cv-00451-SEB-TAB |
| COMMISSIONER OF INDIANA POLICE DEPARTMENT, JEREMY BRICE Sgt., Indiana State Police #8862, | ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT
AND RELINQUISHING JURISDICTION OVER STATE LAW CLAIMS**

Steven John Hecke, a Federal Bureau of Prisons inmate, filed suit against the Commissioner of the Indiana Police Department ("ISP Commissioner") and Indiana State Police Sergeant Jeremy Brice, alleging that Sgt. Brice knowingly conducted a warrantless search of his cell phone. Mr. Hecke alleges this search violated his Fourth Amendment rights and Indiana tort law. *See* dkt. 16. He moved for summary judgment on September 3, 2024, dkt. 72, and the defendants filed a motion for summary judgment on September 24, 2024. For the reasons set forth below, the defendants' motion is **granted as to Mr. Hecke's constitutional claim** only, and Mr. Hecke's motion is **denied**.[1] The Court relinquishes jurisdiction over Mr. Hecke's state law claims.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

---

[1] Mr. Hecke's motion for leave to file a surreply, dkt. 86, is granted insofar as the Court considered the attached briefing, dkt. 86-1, when resolving the summary judgment motions.

1

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed and, potentially, in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background

The parties, having filed cross-motions for summary judgment, agree on many of the underlying facts. Mr. Hecke's claims stem out of a criminal investigation and search of his cell phone. He was ultimately convicted in the United States District Court for the Northern District of Indiana "of two counts of distributing methamphetamine, one count of maintaining a drug-involved premises, one count of possession with intent to distribute methamphetamine and fentanyl, and two gun counts[.]" *United States v. Hecke* [hereinafter *N.D. Ind. Hecke*], No. 1:20-cr-00007, 2023 WL 3244441, at *1 (N.D. Ind. May 4, 2023); *see* dkt. 72-5 at 17. He was sentenced to life imprisonment. *N.D. Ind. Hecke*, 2023 WL 3244441, at *1. Since the summary judgment motions in this action were briefed, the United States Court of Appeals for the Seventh Circuit affirmed the verdict and sentence. *United States v. Hecke*, No. 23-2384, 2025 WL 2237055, at *9 (7th Cir. Aug. 6, 2025).

In January 2020, Mr. Hecke was arrested in Fort Wayne, Indiana, by the Allen County Drug Task Force ("Allen County"). Dkt. 72-5 at 8, 11. At the time, Mr. Hecke had a Samsung cell phone and an iPhone cell phone on his person. *Id.* at 15. The Samsung cell phone was registered to Mr. Hecke by name, while the iPhone was registered to a pseudonym. *Id.* Mr. Hecke does not dispute that the iPhone was his. *See id.* at 18. Law enforcement took possession of both phones, and Allen County ultimately submitted the phones to the Indiana State Police ("ISP") Intelligence and Investigative Technologies Section. Dkt. 72-1 at ¶¶ 3, 8.

Defendant Jeremy Brice was a network intrusion and exploitation investigator and forensic examiner with the ISP Intelligence and Investigative Technologies Section at the time. *Id.* at ¶ 3. In this role, he assists local police with the forensic examination of electronic devices. *Id.* at ¶ 4. Forensic examiners do not seize devices or obtain search warrants, *id.* at ¶ 7, and Sgt. Brice did

3

neither in this case. *Id.* at ¶ 11. An investigator from the submitting local police department submits the electronic devices, an examination request, and a signed attestation affirming that there is proper legal authority for the examination. *Id.* at ¶¶ 6-7. No forensic examinations of devices are completed without an attestation. *Id.* at ¶ 6.

In this case, Allen County submitted "ISP Cyber Crime Digital Exam Request Form" paperwork that described the phones and served as an examination request with an attestation signed by Allen County Detective Darren Compton. *Id.* at ¶ 8; dkts. 72-2, 72-3. The signed attestation reads as follows:

> There is proper legal authority (i.e. search warrant, consent to search, abandoned, exigency, probation terms, etc.) to search the contents of the submitted device(s). (Please advise if there are any restrictions defined by the warrant or consent.) Be sure to submit copy of arrest report or brief summary case report with your request. Failure to submit these documents may result in a delay in processing. <u>Unsigned request with no legal authority will result in no examination by ISP Cyber Crime Unit.</u>

Dkts. 72-2, 72-3 (emphases in originals). Allen County also provided copies of search warrants relating to the investigation.[2] Dkt. 72-1 at ¶¶ 10, 12.

Sgt. Brice examined the phones, including the iPhone. *Id.* at ¶ 12. He relied on the submitted attestation and warrants for his authority to search the iPhone. *Id.* According to Mr. Hecke, at the ensuing trial, no evidence derived from his pseudonymous iPhone was presented. Dkt. 72-5 at 18-19. However, he indicates that text messages derived from the iPhone were considered at sentencing. *Id.*

---

[2] There are three warrants on the record, none of which specifically authorize a search of Mr. Hecke's iPhone. Dkt. 72-4. Neither Sgt. Brice's affidavit, dkt. 72-1 at ¶ 10 (citing the three warrants on the record, but not actually referring to any specific warrants), nor any other filing clarifies what the warrants he received from Allen County authorized.

Mr. Hecke claims the iPhone was unconstitutionally and tortiously searched without a warrant. Whether any warrant specifically authorized a search of Mr. Hecke's iPhone, however, is ultimately immaterial to Sgt. Brice's Fourth Amendment liability.

### III.
### Discussion

Mr. Hecke alleges the search of his iPhone constituted a violation of his Fourth Amendment right to be free of unreasonable searches and the tort of invasion of privacy. *See* dkt. 16. He pursues his constitutional claim against Sgt. Brice through 42 U.S.C. § 1983 and his tort claim against both defendants. *Id.*

**A. Fourth Amendment – Defendant Brice**

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government. The Supreme Court "has inferred that a warrant must generally be secured" for a search to comply with the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The warrant requirement applies to cell phones. *Riley v. California*, 573 U.S. 373, 401 (2014).

Mr. Hecke does not challenge the seizure of his iPhone. He argues that its *search* occurred without a warrant. Sgt. Brice argues that he did not violate Mr. Hecke's Fourth Amendment rights and that he is entitled to qualified immunity.

Sgt. Brice searched the iPhone based upon Detective Compton's signed attestation that "[t]here [was] proper legal authority . . . to search the contents of the" iPhone. Dkts. 72-1 at ¶ 12, 72-2, 72-3. Mr. Hecke argues that, in fact, there was no proper legal authority to search the contents of the phone and that the search was a technical violation of his Fourth Amendment rights. Sgt. Brice, on the other hand, argues that he reasonably relied on the attestation such that *he* did not violation Mr. Hecke's constitutional rights.

The Court need not resolve this dispute. *Smith v. Kind*, 140 F.4th 359, 365 (7th Cir. 2025).³ Whether or not a technical violation of the Fourth Amendment occurred, it was not a violation that every competent officer would have understood. Sgt. Brice is therefore entitled to qualified immunity.

### i. Qualified Immunity Standard

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)).

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the

---

³ "To overcome qualified immunity, [a plaintiff] must clear two hurdles. First, he must show that the officers violated his constitutional rights. Second, he must demonstrate that those rights were clearly established at the time of the violation. *Courts have discretion to begin with the second step* to refrain from ruling on potentially difficult questions. This approach, the Supreme Court has explained, aligns with principles of constitutional avoidance and can save substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Smith*, 140 F.4th at 365 (citations and internal quotations omitted) (emphasis added).

rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)). Qualified immunity thus "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

### ii. Qualified Immunity Application

Every reasonable officer would *not* have understood that relying on a signed attestation from another officer affirming the search's legality and searching a cell phone which was submitted through proper channels and was—unbeknownst to the searching officer—without a search warrant, violates the Eighth Amendment. Mr. Hecke fails to provide, nor does the Court uncover, any precedent which puts officers in that position on notice of the search's unconstitutionality or puts the question beyond debate. In fact, principles of good-faith reliance and the collective knowledge doctrine affirm that Sgt. Brice is entitled to qualified immunity.

The Seventh Circuit has held that "[a]n officer who relies on a warrant later declared invalid will not be liable for damages under § 1983 unless the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Cannaday v. Sandoval*,

7

458 Fed. App'x 563, 567 (7th Cir. 2012) (discussing qualified immunity) (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) and citing *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010)). "This standard derives from, and is applied much like, the standard for the good-faith exception to the exclusionary rule." *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1060 (7th Cir. 2018) (citation omitted). These holdings, while not directly applicable, are akin to the facts here and support qualified immunity for Sgt. Brice. He relied in good faith on a signed attestation. He was not present for the seizure, dkt. 72-1 at ¶ 11, and it was reasonable for him to rely on the attestation that explicitly certified the legality of the search. At bottom, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. Sgt. Brice had ample reason to believe he was complying with the Fourth Amendment when he searched the iPhone.

Further, the collective knowledge doctrine "permits an officer to . . . search . . . a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citing *United States v. Hensley*, 469 U.S. 221, 232-33, (1985)). For example, "[t]here is no Fourth Amendment violation if the knowledge of the officer directing the stop, search, or arrest—or the collective knowledge of the agency for which he works—is sufficient to constitute probable cause." *Id.* (citing *United States v. Harris*, 585 F.3d 394, 400 (7th Cir. 2009)). This doctrine—with the absence of precedent putting the unconstitutionality of the subject search beyond debate—illustrates a state of the law which does not put every reasonable officer on notice that he cannot rely on the representations of other officers in carrying out a search if the underlying representation is later revealed to be incorrect. The collective knowledge doctrine promotes efficient, collaborative policework. For

every reasonable officer to be on notice that such teamwork—if his reliance on another officer is unknowingly, in-good-faith misplaced—is unconstitutional would be incongruous with the doctrine.

Moreover, the question before the Court is not whether evidence from the search should be excluded at a criminal trial or even whether Mr. Hecke's rights were violated by police collectively. It is whether Sgt. Brice individually should be liable for damages based on his individual conduct. *Colbert v. City of Chicago*, 851 F.3d 649, 659 (7th Cir. 2017) ("individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation."). The good-faith reliance and collective knowledge doctrines are particularly helpful in answering that question, and there is no evidence that Sgt. Brice's involvement extended beyond conducting a search in good-faith reliance on Allen County's attestation that the requested search was legal.

Guided by the aforementioned doctrines and given the Allen County attestation, there is no basis for finding that every reasonable office would have understood that searching the iPhone would violate the Fourth Amendment and give rise to liability for damages. Mr. Hecke, therefore, cannot defeat the second, "clearly established" prong to overcome Sgt. Brice's invocation of qualified immunity. The Court finds that Sgt. Brice is not liable to Mr. Hecke for the search under 42 U.S.C. § 1983 under the doctrine of qualified immunity.

### B. State-Law Claims

With Mr. Hecke's constitutional claim staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision

whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (citation and internal quotation omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." (citation and internal quotation omitted)). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (citation and internal quotation).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Mr. Hecke's state-law claims.

The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

The Court has not expended significant resources on the pending state-law claims. The Court does not expect that the parties' discovery and briefing efforts with respect to the state law claims will go to waste. Rather, the evidence and legal research they have uncovered should be every bit as relevant in a state-court proceeding

It is not so clear how the state-law tort claims should be decided here that the Court should decide the claims rather than relinquish jurisdiction. At minimum, there are two issues that require additional development. First, the defendants argue that they are immune from the invasion of privacy by intrusion tort claims pursuant to the Indiana Tort Claims Act because Mr. Hecke's claims are based on actions allegedly within the scope of their employments. *See* Ind. Code § 34-13-3-5(b). However, the scope-of-employment protection is subject to exceptions that neither side has addressed. *See* Ind. Code §§ 34-13-3-5(c)(3), (c)(4). Second, a recent decision by the Indiana Court of Appeals indicates that there are unsettled or evolving questions regarding the scope of and defenses to the Indiana tort of invasion of privacy by intrusion. *See Harris v. Deaconess Hosp., Inc.*, 235 N.E.3d 224, 230-31 (Ind. Ct. App. 2024) (holding that the Indiana Supreme Court or the legislature are the only bodies which may extend the tort beyond physical invasion to align with the *Restatement* and other jurisdictions), *pet. denied*, No. 24A-CT-47, 2024 WL 4702124 (Ind. Oct. 31, 2024) (two of the five Justices voted to grant transfer to the Indiana Supreme Court).

Finally, comity always favors allowing state courts to decide issues of state law.

Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over Mr. Hecke's state law claims.

## IV.
## Conclusion

The defendants' motion for summary judgment is **GRANTED in part**. Dkt. [72]. The Court grants summary judgment as to Mr. Hecke's constitutional claim and **relinquishes** supplemental jurisdiction over his state-law claims. Mr. Hecke's motion for summary judgment is **DENIED**. Dkt. [65].

Mr. Hecke's motion for leave to file a surreply is **GRANTED**, dkt. [86], insofar as the Court considered the attached briefing, dkt. 86-1, when resolving the summary judgment motions.

This action is **DISMISSED**. All claims are **dismissed with prejudice** except the state-law claims recognized in the screening order. Dkt. 16. Those claims are **dismissed without prejudice** for refiling in an appropriate forum.

The **clerk is directed** to enter **final judgment** consistent with this order.

**IT IS SO ORDERED.**

Date: 9/16/2025

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

STEVEN JOHN HECKE
09163-027
MANCHESTER - FCI
MANCHESTER FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 4000
MANCHESTER, KY 40962

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Allison Mauk
Office of Indiana Attorney General
allison.mauk@atg.in.gov